**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DAVID SHENBAUM et al.,                  ) NO. 2:22-cv-08062-KS
                                        )
                 Plaintiffs,            )
                                        )
        v.                              ) MEMORANDUM OPINION AND ORDER
                                        ) RE: DEFENDANT'S MOTION FOR
CITY OF MANHATTAN BEACH,                ) SUMMARY JUDGMENT [DKT. NO. 101]
                                        )
                 Defendant.             )
_____ )

**INTRODUCTION**

Before the Court is the Defendant City of Manhattan Beach's motion for summary judgment as to all Plaintiffs David Shenbaum's and Timothy O'Brien's retaliation claims under 42 U.S.C. § 1983. (Dkt. No. 101.) For the following reasons, Defendant's motion for summary judgment is GRANTED in its entirety.

**BACKGROUND**

On November 3, 2022, Plaintiffs David Shenbaum ("Shenbaum") and Timothy O'Brien ("O'Brien") (collectively "Plaintiffs"), firefighters with the Manhattan Beach Fire Department ("MBFD"), initiated this civil rights action alleging that Defendant City of Manhattan Beach ("City") approved, adopted, and ratified policies constituting a continuing pattern and practice

1

of retaliation, discrimination, harassment, and intentional violations of Plaintiffs' rights.  (*See* Dkt. No. 1.)  Plaintiffs filed the First Amended Complaint on January 6, 2023 (Dkt. No. 10), and the Second Amended Complaint on March 17, 2023 (Dkt. No. 18).

On March 30, 2023, Defendant moved to dismiss the first four claims for relief in the Second Amended Complaint.  (Dkt. No. 21.)  The parties consented to proceed before Magistrate Judge Michael R. Wilner on May 11, 2023.  (Dkt. No. 30.)  On June 28, 2023, Judge Wilner held a hearing during which he granted Defendant's motion to dismiss the first four claims and, as agreed to by the parties, permitted Plaintiffs until July 31, 2023 to file an amended complaint (or to proceed on only the unchallenged fifth claim in the Second Amended Complaint).  (*See* Dkt. No. 36.)

Plaintiffs filed the operative Third Amended Complaint ("TAC") on July 31, 2023. (Dkt. No. 38.)  In the TAC, Plaintiffs asserted four claims for relief under 42 U.S.C. § 1983 ("Section 1983") and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978):

1. Retaliation against Plaintiffs for Plaintiffs' speech and association with the Manhattan Beach Firefighters Association ("MBFA")[1], particularly the 2018 vote of no confidence ("VONC") against the then Fire Chief and three Battalion Chiefs, by:

    i. Negotiating an illegal contract with the Manhattan Beach Fire Management Association ("MBFMA")[2] that prohibited Plaintiffs from "promoting" to Battalion Chief ("2020 Agreement");

---

[1]  The Manhattan Beach Firefighters Association ("MBFA") is the bargaining group of which Plaintiffs, as non-management Fire Captains, were members.  (Dkt. No. 101 at 5.)

[2]  The Manhattan Beach Fire Management Association ("MBFMA") is "[t]he bargaining unit that represented Battalion Chiefs in the City's Fire Department."  (*Id*. at 5 n.2.)  Defendant emphasizes that Plaintiffs, as Fire Captains, were never members of the MBFMA.  (*Id*. at 5.)

     ii.    Refusing to even consider corrections to the improper MBFMA agreement until Plaintiffs were no longer on the City's Battalion Chief Eligibility list; and

     iii.    Subjecting Plaintiffs to severe disciplinary consequences for trivial matters while refusing to investigate known and verifiable disciplinary matters against non-MBFA members and/or other MBFD employees that did not petition the City Council to investigate ineffective management of the MBFD.

2.  Ratification of the retaliatory actions of the Manhattan Beach City Council, the MBFD Fire Chief and Battalion Chiefs, and the Manhattan Beach City Manager.

3.  Unconstitutional customs, practices, and policies under *Monell*, including:

     i.    Threatening legal action against Plaintiffs and other MBFA leadership for engaging in protected speech;

     ii.    Negotiating an illegal contract with the MBFMA that prohibited Plaintiffs from "promoting" to Battalion Chief;

     iii.    Refusing to even consider corrections to the MBFMA agreement until Plaintiffs were no longer on the City's Battalion Chief Eligibility list;

     iv.    Subjecting Plaintiffs to severe disciplinary consequences for trivial matters while refusing to investigate known and verifiable disciplinary matters against non-MBFA members and/or other MBFD employees;

     v.    Permitting retaliation against Plaintiffs and other employees for their participation in first amendment protected activities.

4.  Retaliation against Plaintiffs for petitioning activity by pretextually "failing," or instructing the examiners to pretextually fail, Plaintiffs on their oral interview for placement on the Division/Battalion Chief promotional list despite Plaintiffs being the only candidates who had previously been on the promotional list.

(*See id.* at 15-21.)

3

On September 5, 2023, Defendant filed a motion to dismiss the first three claims for relief in Plaintiffs' TAC. (Dkt. No. 41.) On October 11, 2023, Judge Wilner held a hearing on Defendant's motion to dismiss during which he dismissed the allegations of retaliatory conduct in the first claim except for those concerning "the City's enactment of the 2020 Battalion Chief Contract allegedly in retaliation for Plaintiffs' protected public speech" as well as the second and third claims regarding Defendant City's liability under *Monell* via ratification and policies, practices, and customs. (Dkt. No. 46 at 1.) Defendant timely filed an answer as to the remaining portion of the first claim and the fourth claim of the TAC on November 1, 2023. (Dkt. No. 48.)

Following Judge Wilner's retirement from the Court, this case was reassigned to Chief Magistrate Judge Karen L. Stevenson on August 28, 2024. (Dkt. No. 66.) On October 18, 2024, Plaintiffs filed a motion for leave to file a Fourth Amended Complaint ("FAC") to add facts concerning: (1) the liability of City Manager Bruce Moe ("Moe") and the Fire Chief Michael Lang ("Lang"); (2) the imposed contract; and (3) the testing change and Lang's perjury. (Dkt. No. 76-1 at 10-12.) The Court denied Plaintiffs' motion for leave in its entirety, finding the motion was untimely and that Plaintiffs could not demonstrate that the allegations they sought to add were newly discovered. (*See* Dkt. No. 92.)

Defendant filed the instant motion for summary judgment ("Motion") on January 8, 2025. (Dkt. No. 101.) On January 17, 2025, Plaintiffs filed two requests to substitute their counsel. (Dkt. Nos. 104, 105.) The Court granted Plaintiffs' requests on January 21, 2025. (Dkt. Nos. 106, 107.) Plaintiffs subsequently filed *ex parte* motions to continue the trial date and the deadline to oppose Defendant's Motion on February 2, 2025. (Dkt. Nos. 115, 116.) The Court granted Plaintiffs' applications and continued the deadline to oppose Defendant's Motion to March 5, 2025 (Dkt. No. 125) and the trial date to June 2, 2025 (Dkt. No. 167). Plaintiffs timely filed their opposition to Defendant's Motion on March 5, 2025. (Dkt. No. 163.) Defendant filed its reply in support of the Motion on March 19, 2025. (Dkt. No. 172.)

4

The Court held a hearing on the Motion on April 10, 2025 and took the Motion under submission for decision.  (Dkt. No. 167 at 2.)

## STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis upon which a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" only if it might affect the outcome of the lawsuit under governing law.  *Id.*

The moving party bears the initial burden of offering proof of the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, the opposing party is required to go beyond the pleadings and, by the party's own affidavits or by other admissible evidence, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  The party opposing the motion must submit sufficient evidence to establish the elements that are essential to that party's case and for which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.

The Court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party."  *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 (9th Cir. 2007).  Where different ultimate inferences reasonably can be drawn, summary judgment is inappropriate.  *Miller*, 454 F.3d at 988.  At summary judgment, "the court does not make credibility determinations or weigh conflicting evidence."  *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citation omitted).

"Evidence may be offered to support or dispute a fact on summary judgment only if it could be presented in an admissible form at trial." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) (citation and internal quotation omitted); *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (citations omitted) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'"). Purported evidence that "sets out mere speculation for the critical facts, without a showing of foundation in personal knowledge [] for the facts claimed to be at issue" is insufficient. *John M. Floyd & Assocs. v. TAPCO Credit Union*, 550 F. App'x 359, 360 (9th Cir. 2013). Conclusory statements are insufficient to defeat summary judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 n.9 (9th Cir. 2011) (en banc).

To establish the existence of a factual dispute, an opposing party need not establish an issue of fact conclusively in its favor; rather, it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); *Int'l Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir. 1985).

## THE PARTIES' ARGUMENTS

### A. Defendant's Motion

First, Defendant asserts that "[b]ecause the Court already dismissed Plaintiffs' *Monell* claims with prejudice and with Plaintiffs' acknowledgment, Plaintiffs' remaining Section 1983 claims are fatally defective as a matter of law." (Dkt. No. 101 at 13.) Therefore, "the Court

should grant summary judgment in favor of the City on this basis, alone." (*Id.*)  However, Defendant asserts that "[e]ven if, *arguendo*, the Court were to further evaluate Plaintiffs' Section 1983 claims, Plaintiffs' claims fail as a matter of law." (*Id.* at 14.)

As to the first claim of retaliation based on the 2018 VONC, Defendant asserts that "there is no genuine issue of material fact demonstrating that Plaintiffs suffered a constitutional injury from the City's adoption of the 2020 Agreement." (*Id.*)  "Plaintiffs did not suffer any constitutional injury or adverse employment action from the City's adoption of the 2020 Agreement because the 2020 Agreement changed the compensation structure for a position Plaintiffs did not even hold" as "Plaintiffs are Fire Captains—not Battalion Chiefs." (*Id.*)

Defendant also asserts that "Plaintiffs cannot present a genuine issue of material fact establishing a causal connection between the January 18, 2018 VONC and the alleged retaliatory act of the City's adoption of the 2020 Agreement." (*Id.* at 15.)  First, Defendant argues that "Plaintiffs cannot meet the proximity in time criterion because the VONC and the adoption of the 2020 Agreement are separated by nearly three years." (*Id.* at 16.)  Next, Defendant argues that "Plaintiffs also cannot meet their burden of establishing a genuine issue of material fact that the City expressed any opposition to Plaintiffs' speech—the VONC." (*Id.* at 17.)

Lastly, Defendant argues that "there is no evidence that the City offered false or pretextual explanations for the adoption of the 2020 Agreement because the City had sound financial and economic reasons for reducing the extremely high amount of money it was paying for fire protection services." (*Id.* at 18.)  Defendant further argues that "[e]ven if Plaintiffs, *arguendo*, could demonstrate causation[,] . . . the undisputed facts show that the City would have reached the same decision to adopt the 2020 Agreement regardless of Plaintiff's 2018 VONC." (*Id.* at 19-20.)

As to Plaintiffs' fourth claim for retaliation based on their filing of this lawsuit, Defendant asserts that Plaintiffs have not suffered a constitutional injury because there is no constitutionally protected right to a promotion. (*Id.* at 21.) Defendant also asserts that Plaintiffs cannot establish causation since "the Fire Chief Panelists did not know of Plaintiffs' lawsuit against the City [and thus] could not have failed Plaintiffs in retaliation for a lawsuit they knew nothing about." (*Id.*) Further, Defendant argues that Plaintiffs cannot establish that the City failed them under false pretenses because "there is no evidence that the City expressed opposition to Plaintiffs' filing of the Complaint or First Amended Complaint" and "the undisputed evidence does not support a finding of bias among the Fire Chief Panelists, Chief Lang, or the City such that Plaintiffs' failure of the Division/Battalion Chief examination was pretextual or occurred under false pretenses." (*Id.* at 23, 26.) Defendant avers that Plaintiffs "failed their interviews because of their unprofessionalism and poor performances." (*Id.* at 26.)

## B.  Plaintiffs' Opposition

Plaintiffs counter that Defendant's argument regarding the earlier dismissal of their *Monell* Section 1983 claims "outrageously misrepresents Magistrate Judge Wilner's ruling on the City's motion to dismiss" and "is a meritless attempt to seek reconsideration of Judge Wilner's ruling that the First Cause of Action is adequately pled." (Dkt. No. 163 at 7.) Plaintiffs assert that "Magistrate Judge Wilner specifically held that the First Cause of Action—which named only the City as a defendant—was adequately pled" and "dismissed the Second and Third Causes of Action not as inadequately pled but as 'duplicative and derivative' of the First Cause of Action." (*Id.* at 8 (quoting Dkt. No. 46 at 1).) Judge Wilner thus dismissed the Second and Third Causes of Action because they "merely duplicated a legally sufficient claim against the City stated in the First Cause of Action." (*Id.*) Plaintiffs further argue that "the Court must reject Defendant's argument that the First and Fourth Causes of Action are defective as a matter of law" because "[t]he TAC states a claim for liability against the City." (*Id.* at 8-9.)

As to the first claim of retaliation based on the 2018 VONC, Plaintiffs argue that "genuine disputes of material fact exist that challenge [Defendant's] theories and, therefore, preclude the grant of summary judgment." (*Id.* at 9.)  To start, Plaintiffs assert that Defendant "misstates the law" as to whether Plaintiffs suffered a constitutional injury or adverse employment action" because "the potential impact [of the 2020 Agreement] on their future career advancement and compensation clearly constitutes a significant employment consequence." (*Id.* at 10-11.)  Additionally, Plaintiffs contend they have presented evidence of a causal link between the 2018 VONC and the 2020 Agreement, including the following:

     i.    "the circumstances surrounding the adoption of the 2020 Contract strongly suggest that it was driven by the motive of retaliation";

    ii.   a text exchange between Fire Chief Espinosa and several City Battalion Chiefs "excoriating Plaintiffs and other VONC signatories" "suggests a concerted effort that implicates key decision-makers in the process" and "indicate[s] bias that influenced the negotiations";

   iii.   Defendant's claim that "its Battalion Chiefs were the highest paid in California" is "inaccurate and results from a misleading manipulation of state data designed to conceal the true impact of staffing levels and overtime practices";

   iv.   the fact that "the City reinstated the previously reduced pay for future Battalion Chiefs" "after Plaintiffs lost their opportunity for promotion" "presents a strong case for a reasonable jury to conclude the City's financial justifications were pretextual and merely a façade"; and

    v.   "substantial evidence robustly contradicts the City's self-serving assertion that the 2020 Contract would have been executed regardless of the VONC," including Defendant's use of manipulated salary data and simultaneous pay raises to other departments.

(*Id.* at 12-15.)

9

1        As to the fourth claim of retaliation based on their filing of this lawsuit, Plaintiffs

2  contend that Defendant's reliance on *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998)

3  is "meritless" because *Nunez* involved a substantive due process claim rather than a First

4  Amendment claim, meaning Defendant's burden is to prove that they took an action reasonably

5  likely to deter an employee from exercising First Amendment rights.  (*Id.* at 16.)  Plaintiffs cite

6  *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) as a rejection of Defendant's *Nunez*-

7  based argument and as authority holding that depriving an employee of a promotion

8  opportunity can be an adverse employment action.  (*Id.*)

10        Moreover, Plaintiffs respond that Defendant's argument that it could not have retaliated

11  against Plaintiffs because the Fire Chief Panelists did not know about Plaintiffs' lawsuit is a

12  "red herring."  (*Id.* at 17.)  Plaintiffs "only need show that the City influenced the panelists to

13  fail the Plaintiffs and that the City took this action to retaliate against [Plaintiffs'] speech," and

14  "Plaintiffs easily meet this requirement."  (*Id.*)  Plaintiffs also argue that "[t]he timing of the

15  lawsuit, closely followed by the hastily arranged exam, coupled with the radical departure from

16  all previous examination protocols and the significant deviation from any reasonable industry-

17  standard exam procedures collectively suggest that the exam was not legitimate" and was

18  "pretextual."  (*Id.* at 18-19.)  Finally, Plaintiffs maintain that evidence of the Human Resources

19  Manager questioning Shenbaum regarding the lawsuit after it was filed and a City

20  Councilmember's comments about "controlling the situation" after receiving the litigation

21  preservation letters "clearly demonstrates that the City expressed both concern and hostility

22  toward the lawsuit" and "is more than sufficient to create a genuine dispute of material fact

23  regarding retaliatory motive."  (*Id.* at 21.)

### C. Defendant's Reply

27        In its Reply, Defendant reiterates that "Judge Wilner unequivocally and specifically

28  dismissed Plaintiffs' *Monell* claims with prejudice, and Plaintiffs do not dispute this."  (Dkt.

No. 172 at 4.)  Defendant further asserts that "Plaintiffs are incorrect in arguing that Judge Wilner's order is dispositive on the viability of Plaintiffs' claims because the City's *Monell* argument presented here was never presented to and was never decided by Judge Wilner" and "[h]is ruling on the City's Motion to Dismiss did not decide whether Plaintiffs could allege Section 1983 liability against the City in the absence of a valid *Monell* claim."  (*Id.*)

Defendant next argues that Plaintiffs' retaliation claim based on the 2020 Agreement fails because the 2020 Agreement is not an adverse employment action and "none of [Plaintiffs'] cited authorities establish the novel proposition that the change in compensation for a position a plaintiff does not hold, but may theoretically apply for in the future, constitutes an adverse employment action."  (*Id.*)  Moreover, Defendant urges that Plaintiffs cannot show any causal connection between the 2018 VONC and the 2020 Agreement because Plaintiffs have merely presented circumstantial evidence as direct evidence of retaliatory intent; have conceded that they do not meet the proximity in time criterion; and rely on inadmissible evidence and opinions regarding a text conversation made by firefighters in a personal text chain to show pretext.  (*Id.* at 6-7.)  Lastly, Defendant emphasizes that "Plaintiffs do not dispute that the City would have entered into the 2020 Agreement regardless of the VONC" and again rely on "inadmissible evidence to dispute the reasons for why the City would have entered into the 2020 Agreement."  (*Id.* at 8.)

As to the retaliation claim based on Plaintiffs' filing of this lawsuit, Defendant argues that *Nunez* is "instructive" because it "sheds light on what constitutes an adverse employment action in the First Amendment retaliation context."  (*Id.* at 8.)  Defendant asserts that Plaintiffs' cited case, *Coszalter*, "merely clarified the impact of *Nunez* that there is 'no category-based limitation on the kind of retaliatory action that is actionable under the First Amendment.'"  (*Id.* (quoting *Coszalter*, 320 F.3d at 975).)  "Accordingly, *Nunez* is still instructive to demonstrate that the entitlement to a promotion is by its very nature speculative and may not arise to the level of an adverse employment action."  (*Id.* at 8-9.)

11

Additionally, Defendant argues that Plaintiffs' "irrelevant and immaterial evidence regarding components of the interview and exam process . . . does not establish any causal connection between their filing of this lawsuit and the Fire Chief Panelists retaliating against them for filing this lawsuit." (*Id.* at 9.) Defendant reiterates that "Plaintiffs performed poorly and acted unprofessionally during their interview, resulting in their failure." (*Id.*) Defendant further asserts that the City's Human Resources Manager's "inquiring about the lawsuit does not establish that [she] opposed Plaintiffs' filing of the lawsuit" and that the Councilmember's speech "does not express any opposition to Plaintiffs' lawsuit" as the speech was made "in the context of overall labor negotiations prior to the lawsuit." (*Id.* at 11.)

Finally, Defendant asserts that Plaintiffs untimely filed their appendix of documents and objections to the City's evidence on March 6, 2025 rather than March 5, 2025, and that the Court should accordingly strike and refuse to consider the untimely materials. (*Id.*)

### THE PARTIES' EVIDENCE

In support of its Motion, Defendant submitted the following:

1. Separate Statement of Undisputed Material Facts and Conclusions of Law (Dkt. No. 101-1);

2. Declaration of Auvi Tonnu (Dkt. No. 101-2);

3. Declaration of Chief Chen Suen (Dkt. No. 101-3);

4. Declaration of Chief Jeremy Sanchez (Dkt. No. 101-4);

5. Declaration of Chris Nigg (Dkt. No. 101-5);

6. Declaration of Ezra Siegel (Dkt. No. 101-6);

7. Declaration of Lisa Jenkins (Dkt. No. 101-7);

8. Declaration of Michael Lang (Dkt. No. 101-8);

9. Declaration of Peter J. Brown (Dkt. No, 101-9);

10. Declaration of the City Clerk for the City of Manhattan Beach Liza Tamura (Dkt. No. 101-10).

In Opposition to the Motion, Plaintiffs submitted the following:

1. Declaration of KWhite (Dkt. No. 163-1);
2. Declaration of David Shenbaum (Dkt. No. 163-2);
3. Declaration of Timothy O'Brien (Dkt. No. 163-3);
4. Objections to Evidence Submitted in Support of Defendant's Motion for Summary Judgment (Dkt. No. 164); and
5. Plaintiffs' Statement of Genuine Disputes (Dkt. No. 164-1).

Plaintiffs also proffered the following exhibits:

A. Vote of No Confidence document;
B. Deposition of Mike Lang – Transcript Excerpts;
C. City Council Meeting Minutes – October 18, 2016;
D. Manhattan Beach Annual Comprehensive Financial Report – June 30, 2020;
E. Manhattan Beach Annual Comprehensive Financial Report – June 30, 2021;
F. Manhattan Beach City Budget – 2020;
G. Manhattan Beach City Budget – 2021;
H. Deposition of Bruce Moe – Transcript Excerpts;
I. MBFMA Agreement;
J. Personnel Rules;
K. Deposition of Wolfgang Knabe – Transcript Excerpts;
L. Deposition of Daryn Drum – Transcript Excerpts;
M. Division Chief Questions;
N. MB Exam Schedule;

13

O.  Expert Chief Castro's Report;

P.  Compilation of text messages found on Battalion Chief Hafdell's old work cellphone disparaging Plaintiffs;

Q.  Email from Chief Lang to Timothy O'Brien and Dave Shenbaum;

R.  Fire Captain to Battalion Chief document sent to O'Brien;

S.  City Councilmember Suzanne Hadley's September 2022 speech.

(Dkt. No. 165.)

Lastly, Defendant submitted the following with its Reply:

1.  Evidentiary Objections to Plaintiffs' Statement of Genuine Disputes (Dkt. No. 172-1);

2.  Response to Statement of Genuine Disputes (Dkt. No. 172-2);

3.  Declaration of Lisa Jenkins (Dkt. No. 172-3);

4.  Declaration of Ezra Siegel (Dkt. No. 172-4).

## EVIDENTIARY OBJECTIONS

The parties have each raised evidentiary objections.  (*See* Dkt. Nos. 69, 71-1.)  In ruling on a motion for summary judgment, the Court may only consider admissible evidence.  *See S. Cal. Darts Ass'n*, 762 F.3d at 925-26; *Fonseca*, 374 F.3d at 846.  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  However, if the evidence could be presented in an admissible form at trial, "then the contents may be considered on summary judgment even if the evidence itself is hearsay."  *Burch v. Regents of Univ. of Cal.,* 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (overruling objections that evidence was irrelevant,

14

speculative, and/or argumentative).  A court must rule on material evidentiary objections. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

Here, the Court will rule on the parties' evidentiary objections as those challenges become relevant to the resolution of Defendant's Motion.  Where this Order cites evidence to which a party has objected, the objection is impliedly overruled.  The Court denies objections to any evidence on which it does not rely.

## UNCONTROVERTED MATERIAL FACTS

After a thorough review of the record, the Court has determined the following facts are undisputed for the purpose of resolving Defendant's Motion.  On January 18, 2018, Plaintiffs David Shenbaum and Timothy O'Brien, firefighters with the Manhattan Beach Fire Department ("MBFD") and members of the Manhattan Beach Firefighters Association ("MBFA"), took part in a vote of no confidence ("2018 VONC") in the then MBFD Fire Chief Robert Espinosa and Battalion Chiefs.  (Dkt. No. 164-1 ¶ 1; *see* Dkt. No. 165, Ex. A.)  The 2018 VONC, which was presented to the Manhattan Beach City Council on March 6, 2018, detailed several concerns regarding the management and operation of the MBFD.  (Dkt. No. 164-1 ¶ 2; *see* Dkt. No. 165, Ex. A.)

Some two years later, in November 2020, the City entered a new contract ("2020 Agreement") with the Manhattan Beach Fire Management Association ("MBFMA") to alter Battalion Chief compensation.  (Dkt. No. 164-1 ¶ 9; *see* Dkt. No. 165, Ex. I.)  The Battalion Chief position is a supervisory leadership position that reports directly to the Chief.  (Dkt. No. 164-1 ¶ 10.)  Both Plaintiffs had previously served as Acting Battalion Chiefs.  (*See* Dkt. No. 164-1 ¶ 11; Dkt. No. 163-2, Shenbaum Decl. at ¶ 2-4, Dkt. No. 163-3, O'Brien Decl. at ¶ 2-4.)

In November 2022, Plaintiffs filed this lawsuit against the City.  (Dkt. No. 1.)  In December 2022, Fire Chief Michael Lang and the City replaced the Battalion Chief position with the Division Chief position and opened the position to internal candidates only.  (*See* Dkt. No. 164-1 ¶¶ 13, 14.)  Five internal candidates applied for the Division Chief position, including Plaintiffs.  (*See* Dkt. No. 164-1 ¶ 14.)  Chief Lang subsequently announced that the traditional examination and interview process would be replaced with an interview-only process.  (*See* Dkt. No. 164-1 ¶ 15.)  Chief Lang selected an external panel of fire chiefs to conduct the Division Chief interviews, which included Monrovia Fire Chief Jeremy Sanchez, Arcadia Fire Chief Chen Suen, and La Verne Fire Chief Chris Nigg (collectively "Fire Chief Panelists").  (*See* Dkt. No. No. 164-1 ¶ 15.)

On January 17, 2023, the Fire Chief Panelists conducted interviews for all Division Chief candidates, including Plaintiffs.  (*See* Dkt. No. 164-1 ¶ 23.)  The Fire Chief Panelists concurred that both Shenbaum and O'Brien should receive failing scores based on their responses and conduct during their interviews.  (*See* Dkt. No. 164-1 ¶ 26.)  Specifically, the Fire Chief Panelists gave Shenbaum a failing score in the "Judgment and Decision Making" category and commented that he used profanity in his interview.  (*See* Dkt. No. 164-1 ¶¶ 27, 28.)  The Fire Chief Panelists gave O'Brien failing scores for "Leadership and Management" and "Innovation and Strategic Thinking."  (*See* Dkt. No. 164-1 ¶ 30.)

## DISCUSSION

## I.    <u>Order on Defendant's Motion to Dismiss the TAC</u>

In the October 11, 2023 Order granting in part and denying in part Defendant's motion to dismiss the TAC, Judge Wilner found that "the core of Plaintiffs' grievance is the City's enactment of the 2020 Battalion Chief Contract allegedly in retaliation for Plaintiffs' protected public speech"; concluded "that this component of the first cause of action is sufficient to state

a claim"; and dismissed the remaining allegations of retaliatory conduct as "too vague to plausibly lead to relief." (Dkt. No. 46 at 1.)  Additionally, Judge Wilner dismissed "the second and third causes of action seek[ing] to establish the City's liability via ratification and *Monell* theories under Section 1983," finding those claims were "duplicative and derivative."  (*Id.*) Accordingly, Judge Wilner ordered that "the case proceed[] with the TAC as the operative pleading as to the first part of the first cause of action (the 2020 contract) and the fourth cause of action (alleged post-complaint retaliation)."  (*Id.* at 2.)

Here, Defendant maintains that "[b]ecause the Court already dismissed Plaintiffs' *Monell* claims with prejudice and with Plaintiffs' acknowledgment, Plaintiffs' remaining Section 1983 claims are fatally defective as a matter of law." (Dkt. No. 101 at 13.)  Plaintiffs contend, however, that "Magistrate Judge Wilner specifically held that the First Cause of Action—which named only the City as a defendant—was adequately pled" and "dismissed the Second and Third Causes of Action not as inadequately pled but as 'duplicative and derivative' of the First Cause of Action." (Dkt. No. 163 at 8-9.)

Judge Wilner's brief order does not clearly specify the grounds on which he relied in finding that Plaintiffs' Section 1983 retaliation claims, which were asserted against the City, were sufficiently pled.  (*See* Dkt. No. 46.)  The order is also unclear as to Judge Wilner's rationale for dismissing Plaintiffs' *Monell* claims as "duplicative and derivative."  (*Id.* at 1.) Given this ambiguity, the Court declines to grant summary judgment—as Defendant argues is appropriate—based solely on Judge Wilner's order.  Nevertheless, for the reasons discussed below and based on a fulsome analysis of the evidence, legal authorities, and argument presented by the parties, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' Section 1983 retaliation claims premised on the 2020 Agreement and Plaintiffs' filing of this lawsuit.

\\

1

2

## II.  **Section 1983 Retaliation Claims**

3

### A. **Legal Standard**

4

5

"The First Amendment shields public employees from employment retaliation for their

6

protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir.

7

2012) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) and *Connick v. Myers*, 461 U.S.

8

138, 140 (1983)). The Ninth Circuit has established a five-factor test for resolving a public

9

employee's First Amendment retaliation claim. *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009).

10

First, the plaintiff must establish a prima facie case of First Amendment retaliation by proving

11

the first three of these *Eng* factors: (1) that they engaged in protected speech; (2) that the

12

defendant took an adverse employment action against them; and (3) their speech was a

13

substantial or motivating factor for the adverse employment action. *See Howard v. City of*

14

*Coos Bay*, 871 F.3d 1032, 1044 (9th Cir. 2017).

15

16

### 1. *Protected Speech*

17

18

When analyzing whether a public employee has engaged in speech protected by the First

19

Amendment, courts determine: (1) whether the employee "spoke on a matter of public

20

concern"; and (2) whether the employee "spoke as a private citizen or public employee."

21

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011) (quoting *Eng*, 552 F.3d

22

at 1070). Speech addresses an issue of public concern "when it can 'be fairly considered as

23

relating to any matter of political, social, or other concern to the community,' or when it 'is a

24

subject of legitimate news interest.'" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quoting *Snyder*

25

*v. Phelps*, 562 U.S. 443, 453 (2011)). Whether the employee was speaking as a private citizen

26

or a public employee depends on the scope and content of the employee's job responsibilities.

27

*Poway Unified Sch. Dist.*, 658 F.3d at 966 (quoting *Eng*, 552 F.3d at 1071). A person speaks

28

in a personal capacity if they had no official duty to make such statements, or if the speech was

18

1    not the product of performing work-related tasks.  *Posey v. Lake Pend Oreille Sch. Dist.*, No.

2    84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008).

3

4                      *2.  Adverse Employment Action*

5

6        The second element of a prima facie First Amendment retaliation claim is whether the

7    employee received an adverse employment action.  To determine if an adverse employment

8    action occurred for purposes of First Amendment retaliation, a plaintiff must prove that the

9    employer's action was "reasonably likely to deter [them] from engaging in constitutionally

10   protected speech."  *Greisen v. Hanken*, 925 F.3d 1097, 1113 (9th Cir. 2019) (quoting *Coszalter*,

11   320 F.3d at 970).  The plaintiff need not have suffered a tangible loss; rather, the key question

12   is whether the retaliatory activity "would 'chill or silence a person of ordinary firmness' from

13   continuing to speak out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 n.1 (9th Cir. 2010)

14   (quoting *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999));

15   *see Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) (en banc) (quoting *Coszalter*,

16   320 F.3d at 974-75) (holding that the purpose of protection against retaliation for engaging in

17   protected speech is to stop "actions by a government employer that 'chill the exercise of

18   protected' First Amendment rights");  *Coszalter*, 320 F.3d at 974 (finding that the "precise

19   nature of the retaliation is not critical to the inquiry").

20

21       Courts have recognized that "[v]arious kinds of employment actions may have an

22   impermissible chilling effect," including minor acts of retaliation and informal measures, such

23   as "the threat of invoking legal sanctions and other means of coercion, persuasion, and

24   intimidation."  *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (citation omitted);

25   *Dahlia*, 735 F.3d at 1079 (citing *Coszalter*, 320 F.3d at 975).  Courts have also found that the

26   insinuation or threat that "some form of punishment or adverse regulatory action" may follow

27   can chill speech in violation of the First Amendment.  *Greisen*, 925 F.3d at 1114; *Coszalter*,

28   320 F.3d at 976-77.

                                                    19

3. *Substantial or Motivating Factor*

The last element to establish a prima facie case of First Amendment retaliation is whether the protected speech was the substantial or motivating factor for any adverse employment action taken. *Howard*, 871 F.3d at 1044-45. The Ninth Circuit has emphasized that "[t]his third step is purely a question of fact." *Eng*, 552 F.3d at 1071.

A plaintiff may rely on circumstantial evidence to create a genuine issue of material fact, if the plaintiff provides evidence that the employer knew of the speech and evidence of at least one of the following: (1) showing a proximity in time between the protected action and the allegedly retaliatory employment decision such that a jury logically could infer that the adverse employment action was in retaliation for the plaintiff's speech; (2) demonstrating that the employer expressed opposition to the speech to them or to others; or (3) showing that the employer's proffered explanations for the adverse employment action were false and pretextual. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir. 2017) (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001)). If the plaintiff establishes all three factors of a prima facie case, "the burdens of evidence and persuasion . . . shift to the [defendant] to show that the balance of interests justified their adverse employment decision." *Eng*, 552 F.3d at 1074.

4. *Adequate Justification for Adverse Employment Action*

If the plaintiff succeeds in shifting the burden to the defendant, the defendant must then show that its "legitimate administrative interests outweigh the employee's First Amendment rights." *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). This balancing inquiry, as established in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), asks "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418. "A government

entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Id.*

"Although the *Pickering* balancing inquiry is ultimately a legal question, like the private citizen inquiry, its resolution often entails underlying factual disputes." *Eng*, 552 F.3d at 1071-72. Therefore, courts must "again assume any underlying disputes will be resolved in favor of the plaintiff to determine, as a matter of law, whether the state has 'adequate justification' to restrict the employee's speech." *Id.*

### 5. *Would Have Reached Adverse Employment Decision Without the Speech*

Lastly, if the defendant fails the *Pickering* balancing test in the fourth factor of the First Amendment retaliation analysis, "it alternatively bears the burden of demonstrating that it 'would have reached the same [adverse employment] decision even in the absence of the [employee's] protected conduct.'" *Id.* (alterations in original) (quoting *Thomas*, 379 F.3d at 808). "In other words, it may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action." *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). This inquiry, is purely a question of fact, so courts "must therefore once again assume the truth of the plaintiff's allegations." *Id.* (citing *Wagle v. Murray*, 560 F.2d 401, 403 (9th Cir. 1977)) ("*Mt. Healthy* indicates the 'trier-of-fact' should determine whether the firing would have occurred without the protected conduct.").

\\
\\
\\
\\

21

### B. Analysis—Retaliation Based on the 2018 VONC

#### 1. Plaintiffs' Prima Facie Retaliation Claim

##### a. Protected Speech

Here, the parties do not dispute that Plaintiffs' participation in the 2018 VONC as members of the MBFA was protected speech. *See, e.g.*, *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (deciding that speech regarding the rate of compensation for members of the city's police force and the working relationship between the police union and elected city officials "substantially involved matters of public concern"); *Lambert v. Richard*, 59 F.3d 134, 136-37 (9th Cir. 1995) (holding that where a library employee told the City Council that the library was mismanaged, the speech was on a matter of public concern because the librarian "spoke as a union representative, not as an individual, and . . . described departmental problems, not private grievances"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1058 (9th Cir. 2013) (finding that Ellins's speech in connection with the police union's no-confidence vote involved a matter of public concern). What is disputed, however, is whether Plaintiffs suffered any adverse employment action based on their participation in the 2018 VONC.

##### b. Adverse Employment Action

Plaintiffs argue that Defendant retaliated against them for their participation in the 2018 VONC by adopting the 2020 Agreement with the MBFMA to alter Battalion Chief compensation. (Dkt. No. 163 at 9-10.) But Defendant counters that "Plaintiffs did not suffer any constitutional injury or adverse employment action from the City's adoption of the 2020 Agreement because the 2020 Agreement changed the compensation structure for a position Plaintiffs did not even hold." (Dkt. No. 101 at 14.) Defendant further points out that "the City

is unaware of any case, reported or unreported, and Plaintiffs have not cited to any case where a change in compensation structure for a position that plaintiff did not hold, but may theoretically apply for in the future, was determined to be an adverse employment action." (*Id.* at 15.) Defendant avers that "[i]ndulging this argument would lead to absurd results that would vastly and uncontrollably expand the scope of an actionable constitutional injury." (*Id.*)

Plaintiffs maintain that "[t]he Ninth Circuit has recognized that even though no promotion is guaranteed, being deprived of opportunities that could lead to a promotion or pay increase can be an adverse employment action." (Dkt. No. 163 at 11.) Plaintiffs further contend "that the argument that the 2020 Contract would only affect the Plaintiffs if they secured a promotion does not preclude it from being considered an adverse employment action" because "[t]his potential impact on their future career advancement and compensation clearly constitutes a significant employment consequence." (*Id.*) In making this argument, Plaintiffs rely on *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996) and *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000). (*Id.*)

But Plaintiffs' cited cases are readily distinguishable from the instant action. In *Strother*, the Ninth Circuit found there was a genuine dispute of fact as to whether Strother, a physician partner in the Southern California Permanente Medical Group, experienced an adverse employment action. 79 F.3d at 869. Specifically, the Ninth Circuit stated:

> Here, however, Strother has alleged in her answers to interrogatories that she was *replaced* as the Coordinator for the "Personal Physician Program," and that she was *excluded* from educational seminars, meetings, and positions involving quality assurance after her complaint to the [California Department of Fair Employment and Housing]. Under the partnership agreement, these positions may have put her in a position for merit pay increases. Her answers to interrogatories also allege that she was *excluded from meetings* with nurses and

23

regarding telephone access, that she suffered some *verbal and physical abuse* at the hands of other doctors, that she has been *excluded from* Urgent Care meetings, that she has been *denied secretarial support*, and that she had been *given a more burdensome work schedule*. These allegations, if proven, would be sufficient to demonstrate an adverse employment decision[].

*Id.* (emphasis added).

In *Brooks*, the Ninth Circuit noted that "[a]mong those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." 229 F.3d 917, 928-29. But the Ninth Circuit also made clear that "declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." *Id.*

Unlike in *Strother* or *Brooks*, here, there is no record evidence that Plaintiffs were ever denied job resources in performing the positions they did hold, or that they were given any different or less favorable work responsibilities than others in those positions. Nor is there evidence that Plaintiffs were excluded from consideration for promotion. Indeed, the Court can find no record evidence that raises a reasonable inference that Defendant's adoption of the 2020 Agreement revising the Battalion Chief compensation, two years *after* the 2018 VONC, had any tangible impact on Plaintiffs' positions, responsibilities, or compensation as Fire Captains. Plaintiffs have also failed to present evidence showing that the 2020 Agreement had any bearing on Plaintiffs' eligibility for the Division/Battalion Chief position or that they were at all deterred from applying for the Division/Battalion Chief position beyond their personal financial considerations of the reduced pay, which they have not shown was specifically targeted at them.

Nevertheless, the Ninth Circuit has emphasized that "[t]he precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases"; rather, "[t]he goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Coszalter*, 320 F.3d at 974-75 (quoting *Rutan v. Republican Party*, 497 U.S. 62, 73 (1990)). Here, therefore, viewing the facts, as the Court must, in the light most favorable to Plaintiffs, a reasonable factfinder could arguably conclude the 2020 Agreement, which reduced pay for *future* Battalion Chiefs, a position that could presumably be filled by MBFA members such as those who participated in the VONC, including Plaintiffs, could have a chilling effect on speech such as the VONC, during which non-management MBFA members were critical of fire department management.

### c. Substantial or Motivating Factor

Even if the 2020 Agreement arguably constituted an adverse employment action, Plaintiffs nevertheless have not put forth sufficient evidence to preclude summary judgment as to whether the 2018 VONC was a substantial or motivating factor of the 2020 Agreement. *Howard*, 871 F.3d at 1044-45; *Ellins*, 710 F.3d at 1062.

Plaintiffs assert that "the circumstances surrounding the adoption of the 2020 Contract strongly suggest that it was driven by the motive of retaliation" because "[t]he City negotiated a contract that favored the existing Battalion Chiefs, who had not participated in the VONC, while simultaneously reducing the pay for future Battalion Chiefs." (Dkt. No. 163 at 12.) According to Plaintiffs, they "were unequivocally the ones adversely affected by that change" because they had "over a decade of experience as Acting Battalion Chiefs and [were] positioned at the top of the Department's eligibility list." (*Id.*)

As to temporal proximity, Plaintiffs argue that the two years between the 2018 VONC and the 2020 Agreement is not relevant to support a lack of motive because "[t]he proximity

need only be close if a plaintiff relies solely on proximity in time to support motive." (*Id.* at 13 (citing *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008)).).

The Ninth Circuit has "cautioned that courts should not engage in a mechanical inquiry into the amount of time between the speech and alleged retaliatory action." *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010); *Coszalter*, 320 F.3d at 977-78 ("A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is always short enough) would be unrealistically simplistic."). Even so, a two-year gap between the protected speech and the alleged adverse action does not in and of itself give rise to an inference of retaliation. *Keyser*, 265 F.3d at 752 (concluding that a two-year gap is too attenuated to establish temporal proximity).

Beyond the timing, Plaintiffs purport to proffer a text exchange between the then Fire Chief and Battalion Chiefs discussing Plaintiffs and other VONC signatories to counter Defendant's claim that there is no evidence that it expressed any opposition to the VONC. (Dkt. No. 163 at 13.)  Defendant contends that "[t]his evidence is inadmissible hearsay and lacks proper authentication and foundation" and that "Plaintiffs' stated reference numbers (PL00373-374 in Exhibit P) are not included in Plaintiffs' evidence." (Dkt. No. 172 at 7.) Indeed, Defendant points out that Plaintiffs "relate the content of text messages that other members of the Fire Department exchanged but did not send to Plaintiffs" through a paragraph in the Shenbaum Declaration. (*Id.* at 6-7.)  Defendant further contends that "even if the Court were to consider these text messages, unflattering statements about Plaintiffs made by firefighters in a personal text chain do not equate to the City's opposition to the VONC." (*Id.* at 7.)

At the summary judgment stage, courts "consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial." *Sernoffsky v. Novak*, No. 23-cv-0039-MMA-VET, 2025 U.S. Dist. LEXIS 56659, at *9 (S.D. Cal. Mar.

26, 2025) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) and *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)).  "To be admissible, a document must be authentic, meaning there must be 'evidence sufficient to support a finding that the item is what the proponent claims it is.'"  *Mott v. PNC Fin. Servs. Grp., Inc.*, 861 F. App'x 125, 127 (9th Cir. 2021) (quoting Fed. R. Evid. 901(a)).  Although trial courts typically cannot consider unauthenticated documents in a motion for summary judgment, Federal Rule of Evidence 56, as amended in 2010, allows the consideration of unauthenticated documents on summary judgment where the evidence could be presented in a form that would be admissible in evidence at trial.  *See* Fed. R. Civ. P. 56(c)(2) advisory committee note on 2010 amendments (stating that a proponent of evidence can either "show that the material is admissible as presented or . . . explain the admissible form that is anticipated" at trial).

Here, however, Plaintiffs have presented no evidence supporting the authenticity of the purported text exchange, for which neither Plaintiff was a participant and for which the only source is Shenbaum's Declaration.  Nor have Plaintiffs identified any individuals who could authenticate the text exchange or indicated a form of the text exchange that could be admissible at trial.  *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Therefore, the Court sustains Defendant's objection to the purported text message exchange described in the Shenbaum Declaration as inadmissible hearsay and has not considered this evidence in deciding Defendant's Motion.

But even if the Court were to consider Plaintiffs' proffered text exchange, Plaintiffs' evidence falls short.  The proffered text messages purportedly disparaging MBFA members involved in the VONC were made two years *before* the 2020 Agreement.  *See Saevik v. Swedish Med. Ctr.*, No. 22-35023, 2023 U.S. App. LEXIS 11451, at *3-4 (9th Cir. May 10, 2023) (concluding that alleged comments disparaging the plaintiff, "while troubling, were made two years before the termination decision, so they are of minimal probative value").  Moreover, a

single text message coordinating a media response to the 2018 VONC is not evidence from which a reasonable jury could conclude that the City directly opposed the VONC and later conspired with MBFD leadership to formulate the 2020 Agreement in response. *See Candelaria v. City of Tolleson*, 721 F. App'x 588, 591 (9th Cir. 2017) (deducing that "a single email about the [speech] written five years earlier by a City official not directly involved in the disciplinary action is not evidence from which a reasonable jury could conclude that the City opposed the [] speech").

Lastly, Plaintiffs assert that Defendant's proffered explanation that it entered into the 2020 Agreement due to the City's financial concerns is false and pretextual. (Dkt. No. 163 at 13-14.) Plaintiffs argue that Defendant relies on misleading and manipulated data as evidence that its justifications for the 2020 Agreement were not pretextual. (*Id.*) Additionally, Plaintiffs aver that "the City had never previously reduced salaries for established managerial-level positions" and that "after Plaintiffs lost their opportunity for promotion to Battalion Chief and the retaliation was complete, the City reinstated the previously reduced pay for future Battalion Chiefs." (*Id.*) "This vast accumulation of facts presents a strong case for a reasonable jury who could conclude the City's financial justifications were pretextual and merely a façade." (*Id.* at 14.)

The Court disagrees based on a thorough consideration of the admissible record evidence. A factfinder would not reasonably conclude that the City's financial rationale for the 2020 Agreement was pretextual based on Plaintiffs' evidence that the City used salary data from the State Controller's Office rather than salary surveys from comparable local cities in negotiations for the 2020 Agreement. Nor would a reasonable factfinder conclude that the City's rationale was pretextual based on reviewing the City's financial reports or budgets, which repeatedly reference the financial impacts of the COVID-19 pandemic on local revenue and do not demonstrate the significant pay increases that Plaintiffs claim occurred after they were denied promotion to the Battalion Chief position. (*See* Dkt. No. 165, Ex. D at vi; Ex. E

28

at vii; Ex. F at 175-201; Ex. G at 197-225.)  The record is simply devoid of evidence that would raise a reasonable inference that the City's rationale for the adoption of the 2020 Agreement was pretextual.  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

Indeed, when taking all the evidence together in a light most favorable to Plaintiffs, a reasonable factfinder could not find that the 2018 VONC was a substantial or motivating factor of the 2020 Agreement.  *CarePartners LLC v. Lashway*, 428 F. App'x 734, 736 (9th Cir. 2011) (granting summary judgment in the defendant's favor because "[w]ith nothing more than their conclusory and speculative allegations, there is not enough evidence to create a genuine issue of material fact").  Thus, Plaintiffs fail to establish a prima facie claim of First Amendment retaliation based on the 2018 VONC.

### 2.  Monell *Liability*

Moreover, Plaintiffs' retaliation claim is fatally deficient under *Monell*.  Where, as here, the defendant is a municipality or municipal body, the plaintiff has an additional burden. Municipalities can be sued under Section 1983 if the public entity maintains a custom, practice, or policy that amounts to deliberate indifference to a plaintiff's constitutional rights, and the policy results in a violation of a plaintiff's constitutional rights.  *Monell*, 436 U.S. at 690-91. There are three ways to demonstrate municipal liability:

> (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in

the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotations omitted).

Here, Plaintiffs' claim wholly fails for lack of evidentiary support. Even if Plaintiffs could establish a triable claim for retaliation in violation of Plaintiffs' First Amendment rights, Plaintiffs have presented no evidence to establish municipal liability under any of the theories identified above against Defendant, the only named defendant in this action. Plaintiffs merely assert that Defendant should be liable without providing any evidentiary support to demonstrate that the *City's* conduct was the "moving force" behind any alleged constitutional violation. *Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (concluding that to demonstrate a municipality's policy deficiencies were the moving force behind the constitutional deprivation, the plaintiff must prove that the injury would have been avoided had the municipality instituted adequate policies); *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiffs must demonstrate that the municipal action was taken with the requisite degree of culpability and that there is a direct causal link between the municipal action and the deprivation of federal rights). As such, Plaintiffs have not demonstrated a genuine dispute of fact as to Defendant's liability under *Monell*.

### 3. Defendant is Entitled to Summary Judgement

For all the above reasons, Plaintiffs have not met their burden of establishing a prima facie First Amendment retaliation claim or Defendant's liability under *Monell*. Accordingly, Defendant's Motion is GRANTED as to Plaintiff's Section 1983 retaliation claim based on the 2018 VONC.

1

2

### C.  Analysis—Retaliation Based on Plaintiffs' Filing of this Lawsuit

3

### 1.  Plaintiffs' Prima Facie Retaliation Claim

4

5

#### a.  Protected Speech

6

7

The parties do not dispute that Plaintiffs' filing of this lawsuit was protected speech.

8

9

#### b.  Adverse Employment Action

10

11    Defendant argues that Plaintiffs not being promoted to Division/Battalion Chief does

12    not constitute an adverse employment action.  (Dkt. No. 101 at 20.)  The Court disagrees.

13

14    As noted above, "an adverse employment action is an act that is reasonably likely to

15    deter employees from engaging in constitutionally protected speech."  *Coszalter*, 320 F.3d at

16    970.  "To constitute an adverse employment action, a government act of retaliation need not be

17    severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is

18    in the form of the removal of a benefit or the imposition of a burden."  *Id.* at 975.

19

20    Here, a reasonable jury could conclude that the purported action of being passed up for

21    a promotion was sufficiently adverse to deter a government employee's speech.  *See O'Connor

22    v. City of El Segundo*, No. CV 20-311-DMG (PLAx), 2020 U.S. Dist. LEXIS 218377, at *10

23    (C.D. Cal. Oct. 20, 2020) (quoting *Hardin v. Wal-Mart Stores, Inc.*, 604 F. Appx 545, 547 (9th

24    Cir. 2015)) (stating that failure to promote is a "classic example" of an adverse employment

25    action); *Ray v. Henderson*, 217 F.3d 1234, 1241-42 (9th Cir. 2000) (explaining that the Ninth

26    Circuit takes an expansive view on the type of actions that can be considered adverse

27    employment actions).  As such, the Court turns to the final element of a prima facie retaliation

28    claim.

31

1

2

### c. Substantial or Motivating Factor

3

The Court finds that Plaintiffs have failed to present sufficient evidence to establish a genuine dispute as to whether Plaintiffs' filing of this lawsuit was a substantial or motivating factor for them being denied a promotion to Division/Battalion Chief.

6

7

Defendant maintains that "[b]ecause the Fire Chief Panelists did not know of Plaintiffs' lawsuit against the City, the Fire Chief Panelists could not have failed Plaintiffs in the Division Chief interviews because of a lawsuit they knew nothing about, precluding Plaintiffs from establishing causation on their Fourth Claim." (Dkt. No. 101 at 22.)  Further, Defendant asserts that "[t]here is no evidence that the Fire Chief Panelists failed Plaintiffs under false pretenses because the undisputed fact remains: Plaintiffs performed poorly and acted unprofessionally during their interviews, resulting in their failure."  (*Id.*)

14

15

Plaintiffs contend "[t]he facts illustrate that immediately after the Plaintiffs filed their lawsuit, the City hastily arranged a peculiar Zoom exam for the Division Chief position" that "was markedly different from previous practices and industry norms, involving panelists who were personal friends and acquaintances of the Fire Chief and selected in a manner drastically different from past panelists' selections."  (Dkt. No. 163 at 19.)  Plaintiffs argue that the following "is even more compelling evidence that the Fire Chief Panelists' failing grades were pretextual":

22

- Plaintiffs had a strong track record history of high performance on exams, making their sudden failure highly unusual and inconsistent.
- Plaintiffs had a long-standing history of excellent performance reviews, further contradicting the failing scores.
- Former Fire Chiefs Drum and Knabe testified that Plaintiffs were highly professional and competent, reinforcing their qualifications for promotion.

- The Fire Chief Panelists' exaggerated reaction to mild profanity was entirely fabricated.  Fire Department supervisors, including former City Fire Chief Espinoza, former Battalion Chiefs, and then-Chief Lang routinely used profanity.  In fact, Chief Suen—one of the Fire Chief Panelists—had personally used profanity when speaking to Plaintiff David Shenbaum in a professional setting.  Firefighters operate in a high-stress, high-risk environment where profanity is commonplace.
- The Fire Chief Panelist's supposed detailed evaluations of "Leadership and Management," "Innovation and Strategic Thinking," "Judgment and Decision Making," "cultural and organizational nuances" are completely implausible given the exam itself consisted of only vague, generic questions that lacked any depth or meaningful assessment.

(*Id.* at 20 (internal citations omitted).)

The causation element requires evidence that the "employer was aware that the plaintiff had engaged in the protected activity."  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  Yet, here, Plaintiffs only speculate that the Fire Panelists had any knowledge of the lawsuit.  In fact, all three members of the Fire Chief Panelists attested that they were *not* aware of or notified of any pending lawsuit by Plaintiffs against the City.  (Dkt. No. 101-3, Nigg Decl., ¶ 4; Dkt. No. 101-4, Sanchez Decl., ¶ 4; Dkt. No. 101-5, Suen Decl., ¶ 4.)  Plaintiffs present no evidence to the contrary other than their own speculation, which is insufficient to defeat summary judgment.  *See John M. Floyd & Assocs*, 550 F. App'x at 360 (concluding that purported evidence that "sets out mere speculation for the critical facts, without a showing of foundation in personal knowledge [] for the facts claimed to be at issue" is insufficient to defeat summary judgment).  Consequently, Plaintiffs have not established a prima facie claim of First Amendment retaliation based on their filing of this lawsuit.

2. Monell *Liability*

Here, too, Plaintiffs fail to present any evidence establishing any factual dispute as to Defendant's liability under any of the *Monell* municipal policy theories: (1) longstanding practice or custom constituting standard operating procedure; (2) decision-making official with final policymaking authority; or (3) ratification. *Menotti*, 409 F.3d at 1147.

To the extent Plaintiffs assert a *Monell* claim based on the City's "policy" of adopting an interview-only selection process for the Division/Battalion Chief position for which they applied, Plaintiffs have not demonstrated that such a "policy" amounted to "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow." *Brown*, 520 U.S. at 411-15 ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."). Nor have Plaintiffs shown the requisite degree of causation or culpability on the part of Defendant. *See Cabasa*, 2015 U.S. Dist. LEXIS 97700, at *13 (granting summary judgement in favor of the municipality where the plaintiff offered no evidence that the policy caused any municipal employee to retaliate against him or that any municipal employee retaliated against him because of the content, or absence of content, of any municipal policy). Thus, Plaintiffs have not demonstrated a genuine dispute of fact as to Defendant's liability under *Monell*.

3. *Defendant is Entitled to Summary Judgement*

For all the above reasons, Plaintiffs have not met their burden of establishing a prima facie First Amendment retaliation claim or Defendant's liability under *Monell*. Accordingly, Defendant's Motion is GRANTED as to Plaintiff's Section 1983 retaliation claim based on their filing of this lawsuit.

# CONCLUSION

Resolving all reasonable doubts as to the existence of genuine issues of material fact against Defendant and drawing all inferences in the light most favorable to Plaintiffs, the Court finds no genuine issues of fact that would preclude summary adjudication on Plaintiffs' Section 1983 retaliation claims premised on Plaintiffs' participation in the 2018 VONC or their filing of this lawsuit. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asso.*, 809 F.2d 626, 630 (9th Cir. 1987).

Therefore, IT IS ORDERED that Defendant's Motion for Summary Judgement is GRANTED in its entirety. Judgment shall be entered dismissing this action with prejudice.

DATED: May 16, 2025

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

35